## KREETAN CO. v. WESTERN ASSUR. CO.

(Circuit Court of Appeals, Sixth Circuit.  December 15, 1921.)

No. 3551.

1. **Insurance ⬤═402—Marine cargo policy held not to have attached.**

   An open lake cargo policy issued to plaintiff, which on notice and payment of the premium covered any lumber cargo shipped by plaintiff during the season on a vessel classed 70 or better in the register of classifications of the American Bureau of Shipping, *held* not to have attached to a cargo loaded by plaintiff in November on a barge which plaintiff also owned, and which, though not classified in its annual register, was afterward, on plaintiff's application, inspected by the Bureau and given a classification of 75, and a certificate issued and delivered to plaintiff, but which certificate, as was common when a vessel was not deemed fit for navigation late in the season, expired by its terms on October 15.

2. **Insurance ⬤═392(1)—Acceptance of premium held not to estop insurer to deny attachment of policy.**

   Payment and acceptance of the premium for insurance of a cargo under an open policy *held* not to estop the insurer to deny attachment of the policy, because the vessel was not of the classification required by its terms, where it did not know such fact, but the insured did, or was chargeable with knowledge of it.

In Error to the District Court of the United States for the Western District of Michigan; Clarence W. Sessions, Judge.

Action at law by the Kreetan Company against the Western Assurance Company.  Judgment for defendant, and plaintiff brings error.  Affirmed.

Frederick L. Leckie, of Cleveland, Ohio (McDonald & Kaltz, of Sault Ste. Marie, Mich., and Holding, Masten, Duncan & Leckie, of Cleveland, Ohio, on the brief), for plaintiff in error.

Sherwin A. Hill and Carl V. Essery, both of Detroit, Mich. (Warren, Cady, Hill & Hamblen and Carl V. Essery, all of Detroit, Mich., and Davidson & Hudson, of Sault Ste. Marie, Mich., on the brief), for defendant in error.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

KNAPPEN, Circuit Judge.  Plaintiff in error sued upon a policy of marine insurance to recover for the alleged total loss of a cargo of lumber, charged to have resulted from perils of the sea, and due directly to the foundering and sinking of the barge on which the cargo was loaded, while on a regular voyage, in tow of a steamer, from Drummond Island, Mich., to Saginaw, Mich.  The policy was what is known as an "open lake cargo" policy.  It did not insure the ship, but only the cargo.  It was not limited to any one voyage, nor did it specify any ship, but expressly covered only lumber loaded on vessels classed 70 and better in the register of classifications of the American Bureau of Shipping, and sailing on or after the date of the policy (March 1, 1918) and before midnight of the 30th day of November following.[1]  The case was tried to a jury.  The District Judge, being of

---

[1] This is the provision of the main policy.  Whether a rider thereon substitutes handbook for register will later be discussed.

opinion, not only that the policy did not attach to the cargo in question, but that the loss did not result from perils of the sea, as that term is used in maritime law, instructed verdict for defendant, on which judgment was entered. This writ is to review that judgment.

The American Bureau of Shipping is an organization engaged in inspecting and classifying all types of vessels on the Great Lakes, principally (but not solely) for insurance purposes. The underwriters, as such, are not financially interested in, and have no control over, the management or operation of the Bureau, although there are some underwriters on the Bureau's board. The Bureau issues each year a so-called register (usually early in the season) containing detailed information as to each vessel, including its official number, type, name, and port of hail, flag, material, tonnage, name of owner or manager, date, the size and dimensions, and when, where, and by whom built, as regards hull, engines, and boilers, respectively, as well as a table of classification showing the percentage of vessel rating, year, dates of issue, and expiration of certificate of classification and when vessel last seen. Register supplements are issued from time to time during the navigation season, covering changes since the main register was issued. The register and supplements are furnished only to subscribers to the classification system, which apparently include underwriters and owners generally, but not universally.

The Bureau also issues each year a hand-book of classifications (usually some weeks later than the register), as a "ready reference for shippers and underwriters," although a legend thereon states that it is "compiled for the exclusive use of the insurance companiees and their agents." It contains only the name of the vessel, its type, flag, materials, tonnage, when built, lumber deck load, and class. Supplements showing changes made since the issue of the main hand-book are issued usually every few weeks during the season, and are sent to the various subscribers to the register, and also to the various underwriters, who in turn send them to the various shippers. The hand-book supplements are not sent to vessel owners unless subscribed for. The main register for the year and its supplements together constitute the "register," and the main hand-book for the year and its supplements together constitute the "hand-book."

The class to which a vessel is assigned is based solely upon an inspection, and is determined by the vessel's condition. The certificate of class is sent to the vessel owner, and always contains an expiration date, which, in case of wooden vessels, is either the end of the current year or an earlier date. The class is sometimes limited to the summer season or to a fixed date—sometimes to a certain class of service, or is restricted to certain waters. A restriction to a given date indicates that the vessel is not regarded by the Bureau suitable in its then condition to navigate later in the season. Seventy was the lowest class.

The lumber in question was shipped on barge No. 1, which was owned by plaintiff, which also owned the steamer which towed the barge on the voyage in question, as well as other vessels. Plaintiff did not have the 1918 register. When the policy of insurance was issued, at the opening of navigation for 1918, and for some time previous, this barge

was not classified or listed in either register or hand-book. Under the conditions then existing the policy would not have covered the shipment in question. On April 11, 1918, an examination and survey of the barge was had by the Bureau at plaintiff's request, for the purpose of giving her a classification. Final action was delayed until certain repairs required by the examiner should be made.[2] The owner's report that the repairs had been made was received by the examiner, who about July 1st recommended a classification of 75, to expire October 15, 1918. On July 6th the Bureau approved the examiner's recommendation, except that it classified the barge at "75 C. F.," which meant "limited to coarse freight" (which term included lumber, but not perishable freight)— the class to expire October 15, 1918, as recommended by the examiner. The certificate was issued accordingly on July 13th and sent to the plaintiff company, which, on August 19th, paid the Bureau's expenses for the examination, survey, and issuing of certificate. The latter came ultimately into the hands of the vessel's captain.

The testimony that the certificate gave the date of the expiration (October 15, 1918), as well as the fact that plaintiff's general manager was informed of its receipt, is not denied. Whether plaintiff's manager actually saw the certificate itself is in dispute. The manager says he was told only of the class, and did not inquire further. The master says he was "real sure" he showed the certificate to the manager. Meanwhile, in the 1918 register, which was issued early in the season of 1918, and in the hand-book of that year, which was issued a few weeks later than the register, the barge was listed, but not classed. It was not contained in the register supplement No. 1 (covering the period from March 1st to June 15th), as no change had been made affecting this barge since the issue of the main register; but it did appear in the second register supplement (covering the period from June 15th to October 31st), with a class of 75 C. F., and a statement that the certificate was dated July 19, 1918, and would expire in October, 1918. It, however, does not clearly appear that the supplement was actually issued before the date of the shipment in question, which was November 7th. Meanwhile, the barge had been listed and classed in the first hand-book supplement (August 2d) as "75 C. F.," but without statement of the date of expiration of certificate of class. It was not contained in the second hand-book supplement (September 30, 1918), or in the third (October 21st), but was included in the fourth supplement (January 10, 1919), under heading "Class Withdrawn," with notation "Expiration of class."

The question is thus presented, as between plaintiff and defendant, whether the barge was on November 7th classed as 70 and better. If

_____

[2] The Bureau's secretary testified: "As I recall, when I first received that report, I was very loath to give that vessel any class whatever, and I took it up with Mr. Bates [the inspector], and I also wrote to the owners that, if they would make certain repairs, we would give her a limited class—that is, up to this October 15th—as we felt that vessel was of such a low character that she was not fit to navigate after that time; that she was not a safe risk for either cargo or hull underwriting. And that is why I limited the class to October 15th." There was no denial of this testimony.

the register governs, plaintiff must fail, for the reason, if for no other, that its only showing of classification showed the latter's expiration before date of shipment. If the hand-book controls as between the parties, regardless of the actual fact of expiration of classification, verdict should not have been directed for nonattaching of insurance, provided the classification in the second supplement as 75 C. F., without statement of limitation of date of expiration of class, must, as between the insurer and the insured, be regarded as continuing throughout the season. It thus comes to this: That if plaintiff is allowed to recover it can be only because of the failure of the hand-book supplement to show that the certificate of classification would expire on October 15th.

The main policy states that the insurance is "on lumber * * * laden on steamers, schooners, and barges classed 70 and better in Great Lakes Registers for the current year," which was 1918. The American Bureau of Shipping, organized in 1916, succeeded the organization known as the Great Lakes Register in the publication of both register and hand-book, and followed the system of its predecessor. A stipulation contained in a rider attached to the policy recognizes this situation, and declares that wherever the words "Great Lakes Register" appear in the contract, or any of its attachments, they shall be construed as reading "Great Lakes Register and/or the American Bureau of Shipping Register"; and it was further stipulated that the "1917 Great Lakes Hand-Book of Classifications shall govern temporarily until the 1918 American Bureau of Shipping Hand-Book of Classifications is furnished"; also that "from and after the receipt by the insured, or its office, of copy of American Bureau of Shipping Hand-Book of Classifications for 1917 [1918] this contract shall not include or cover cargoes on or in board any vessel not classing 70 or better in said 1917 [1918] hand-book except," etc.[3]

Plaintiff, invoking the rules that the contract must be construed most strongly against the insurer, and that in case of conflict between the main policy and the rider the latter shall control, contends that the hand-book alone controls the question of classification; that inasmuch as the only hand-book for 1918, issued before the loss (and in which the barge was classed) contained no date of class expiration, the policy must be held to have attached to the cargo in question. The District Judge recognizing the general rules of construction invoked by plaintiff, was of opinion that both the main contract and the rider should be construed together; that, so construed, the contract requires that the classification appear in the register, and probably in the hand-book as well. He concluded that so far as appeared by the proof the classification terminated on the 15th day of October, and that the barge was not classed as 70 or better after that date—the only thing to the contrary being the "fact that the limitation does not appear in the hand-book."

[1] We do not find it necessary to determine what the result would have been, had plaintiff been the owner, not of the barge, but only of

---

[3] We have not stated these provisions in the order in which they are given in the rider.

the cargo, and had had no knowledge, other than that conveyed by the hand-book, as to the date when the certification of classification would expire.[4]   We do not mean by so saying to imply disagreement with the views of the District Judge as applied to such case, but the actual situation is quite different.   We cannot, without violence to the record, refuse to recognize the undisputed proof that the classification was in fact limited to October 15th, nor the imperative conclusion that plaintiff, by the receipt of the certificate containing that information, was legally charged with knowledge thereof, and whether or not its officers in fact observed the express words of limitation contained in the certificate.   To hold otherwise would be to exalt form over substance and to substitute fiction for fact.   In saying this, we may leave out of account the secretary's testimony given in note 2, supra.   It is not a question of private records or secret determination of the Bureau. The listing of the barge in the main register and the main hand-book for 1918, without statement of class, was plainly not the "classing" contemplated by the policy.   Nor are we impressed by the argument that a classification once made necessarily continued for the season, in spite of knowledge or notice to the contrary.   We are also unable to assent to the proposition that the termination of the certificate did not mean the termination of the classification.   The record is distinctly to the contrary.

The conclusion we have reached does not amount to defeating an affirmative and continuing hand-book classing by evidence outside that record to the prejudice of one relying, and entitled to rely, conclusively thereon.   The most that can be said of the hand-book record is that it does not show when the certificate would expire.   The Bureau's secretary testified that "it has never been customary to give the expiration date in that hand-book," but that "it is customary to give it in the main register."   We have already said that the class is sometimes limited to the summer season, or to a certain kind of service, or is restricted to certain waters.   Such facts appear in the hand-book.   With this limitation, and assuming that the secretary's testimony just referred to means that it was not customary to show in the hand-book future expiration dates (these in fact do appear in the register), the testimony is not only borne out by the hand-book, but there is no testimony to the contrary.   There is also nothing to the contrary in the fact that the hand-book supplements contain lists of vessels in "class withdrawn" (which plainly means already withdrawn or expired, and since the issue of the main hand-book or register, or possibly an earlier supplement), and of "continuation of class" (and under which, of course, the barge in question never appeared), this latter heading relating to vessels already classed in the register as under certificates expiring at a given date before the end of the season, and usually classed in the hand-book, but always there without date of expiration of certificate.

[4] It appeared without dispute that the 1918 hand-book was sent to plaintiff as owner, although there is no express testimony that plaintiff consulted the hand-book or had knowledge of the classification of the barge contained in the first supplement.

[2] But it is perhaps enough, in this connection, to say that the hand-book does not affirmatively show, and was not intended even prima facie to indicate, that the classification shown in the hand-book without date of expiration would continue throughout the navigation season, and thus contained nothing inconsistent with, or in any way weakening the effect of the direct and positive notice previously given the insured that the certificate of classification would expire on October 15th, and so before the shipment in question was made. Nor did the receipt by the underwriters of the premium rates for the shipment in question (or for other shipments, if any, after October 15th) upon the barge in question estop defendant from asserting that the certificate had expired. The proof is undisputed that the underwriters are not furnished with copy of the certificate of class, nor are they notified of change in class unless they so request; and there is no evidence that the underwriters had any knowledge until after the loss that the certificate had expired.

We therefore think the verdict was properly directed for defendant, for the reason that the insurance did not attach to the cargo. This conclusion makes it unnecessary to consider the other ground on which verdict was directed.

The judgment of the District Court is accordingly affirmed.